**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3270

_____

In re: Asbestos Products Liability Litigation (No. VI)
CAROL J. ZELLNER, Individually and as Special
Administrator of the Estate of Clifford R. Zellner, (Dec.),
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-11-cv-66746, 2-01-md-00875)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Pursuant to L.A.R. 34.1(a)
October 7, 2015

Before: McKEE\*, *Chief Judge*, AMBRO and HARDIMAN, *Circuit Judges*

(Opinion Filed: October 26, 2016)

_____

OPINION\*

_____

---

\* Judge McKee concluded his term as Chief of the U.S. Court of Appeals for the Third
Circuit on September 30, 2016.

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Chief Judge*.

Carol J. Zellner, on behalf of the estate of Clifford R. Zellner, appeals the district court's order granting summary judgment in favor of CBS Corporation (a/k/a Westinghouse). Mrs. Zellner argues that the district court erred in finding that she failed to establish a genuine dispute about whether CBS switchgear had deteriorated and exposed her now deceased husband to asbestos-containing dust. For the reasons below, we will reverse and remand.[1]

**I.**

Our review of a district court's grant of summary judgment is plenary.[2] Accordingly, we apply the same standard as the district court.[3] Summary judgment is appropriate where, construing all evidence in the light most favorable to the nonmoving

---

[1] The district court had jurisdiction under 28 U.S.C. § 1407, which authorizes the transfer of cases presenting common issues of fact to a single district court. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

 We note that CBS is correct that initially, jurisdiction under 28 U.S.C § 1291 was lacking because Mrs. Zellner's claim against one of the original defendants was dismissed without prejudice. *See Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 438 (3d Cir. 2003) ("[W]e have adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed *without prejudice*.") (emphasis in original). However, Mrs. Zellner corrected this defect by explicitly abandoning her claim against the defendant, having "no intention of further pursuing [it]." Appellant Reply Br. at 4-5; *see Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991) (finding jurisdiction under 28 U.S.C. § 1291 for claims dismissed without prejudice when "[s]everal months after th[e] appeal was filed, plaintiffs renounced, through letter briefs, any intention to take further action" in regard to those claims). In effect, this finalized the dismissal.

[2] *See Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).

[3] *See id.*

2

party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]  Our function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[5]

## II.

The parties agree that substantive Wisconsin law applies to this action, which was transferred from the United States District Court for the Eastern District of Wisconsin to this Circuit.[6]  Under Wisconsin law, the test for causation is "whether the defendant's negligence was a substantial factor in contributing to the result."[7]  A defendant's conduct is a substantial factor when a reasonable person considering the facts could find that the conduct "had such an effect in producing the harm" that it was a cause.[8]  However, "a mere possibility" of causation is insufficient.[9]  If "the probabilities are at best evenly balanced," summary judgment is required.[10]

## III.

---

[4] Fed. R. Civ. P. 56(a); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015).

[5] *Santini*, 795 F.3d at 416.

[6] **[Appellee Br. at 8 n.3.]**

[7] *Zielinski v. A.P. Green Indus., Inc.*, 661 N.W.2d 491, 496 (Wis. Ct. App. 2003) (quoting *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 N.W.2d 652, 654 (Wis. 1978)).

[8] *Id.* at 497.

[9] *Id.*

[10] *Id.* (quoting *Merco Distrib. Corp.,* 267 N.W.2d 652, 655).

This court's recent precedential decision in *Frankenberger v. CBS Corporation* controls our analysis.[11]  In *Frankenberger*, we partially reversed[12] the district court's grant of summary judgment in favor of CBS and found that a jury could reasonably infer that Mr. Frankenberger, the employee plaintiff, had been exposed to respirable asbestos dust from CBS switchgear.[13]  Like Mr. Zellner, Mr. Frankenberger worked as a pipefitter and alleged that he was exposed to asbestos-containing dust from CBS switchgear.[14]  Neither plaintiff worked directly with CBS switchgear, but both worked in close proximity to the same equipment for decades.[15]  Each presented medical expert testimony that exposure to asbestos was at least a partial cause of their lung cancer.[16]  In support of his claim that CBS switchgear was the source of the asbestos that he was exposed to, Mr. Frankenberger presented expert testimony that "the switchgear's asbestos-containing parts would likely deteriorate and release asbestos dust during maintenance."[17]  We relied

---

[11] *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. 15-1988, 2016 WL 4750507 (3d Cir. Sept. 13, 2016).  We applied Indiana law in *Frankenberger*, which, for our purposes, does not meaningfully differ from the Wisconsin law we apply here.  *See id.* at *4 & n.1.

[12] In *Frankenberger*, we affirmed the district court's grant of summary judgment on the plaintiff's *turbine* asbestos-exposure claims.  *Id.* at *4.  Only CBS switchgear, not turbines, are at issue in Mrs. Zellner's appeal.

[13] *Id.* at *5 ("While it is possible the dust Sperber observed being blown off the switchgear was external dust . . . . [, f]actual disputes such as this are best left to the jury.").

[14] *Id.* at *1.

[15] *Id.* at *1, 2. **[Appellant Br. at 24-25.]**

[16] *Id.* at *1. **[Appellant Br. at 6; Appellant App. at 206.]**

[17] *Id.* at *5.

on this evidence in ruling in Mr. Frankenberger's favor.[18]  That holding is conclusive on our analysis of Mrs. Zellner's proffer of substantially equivalent evidence here.[19]

The district court in this case found that Mrs. Zellner presented evidence that Mr. Zellner was exposed to respirable dust blown out of CBS switchgear boxes and that CBS switchgear contained asbestos.[20]  However, it concluded that she failed to present sufficient evidence that the CBS switchgear at Fort Howard was deteriorated and released *asbestos-containing* dust.[21]  We disagree.  Given our holding in *Frankenberger*, we hold that Mrs. Zellner's evidence of deterioration and asbestos exposure was sufficient to survive summary judgment.

CBS' central argument to the contrary is that Mrs. Zellner failed to introduce first-hand testimony or other factual support for her assertion that the switchgear at Fort Howard was in a deteriorated condition at the time of Mr. Zellner's alleged exposure.[22]  This ignores the extensive evidence in the form of expert testimony that switchgear regularly deteriorates over time due to normal operations and cleaning.[23]

For instance, Mrs. Zellner's experts stated that switchgear components deteriorate during normal operations for a variety of reasons, including:  (1) exposure to a flow of

---

[18] *Id.* at \*5 ("[I]t would not be unreasonable for a jury to conclude—*relying on Frankenberger's expert*—that the dust contained asbestos.") (emphasis added).

[19] **[*See, e.g.*, Appellant Br. at 35.]**

[20] *Zellner v. A.W. Chesterton Co.*, No. 11-00283, 2014 WL 5139444, at \*1, n.1 (E.D. Pa. May 19, 2014).

[21] *Id.*

[22] **[Appellee Br. at 25, 31.]**

[23] *See, e.g.*, Appellant App. at 286, 313-15.

electricity;[24] (2) exposure to heat;[25] and (3) the stopping and restarting of the equipment.[26] CBS offers no evidence to suggest that the switchgear at Ford Howard was not exposed to electricity and heat. Indeed, the switchgear's function of controlling the flow of electricity suggests the contrary.[27] We can also infer that the switchgear was often stopped and restarted because Mr. Zellner's co-worker testified that each paper machine at Fort Howard was shut down once a week along with its switchgear.[28]

In addition, one of Mrs. Zellner's experts explained that when switchgear starts to deteriorate it often causes "some asbestos containing materials to flake off, break, or crumble, into a powdery or dust like material which accumulates on the surfaces of the switchgear and inside the boxes."[29] An internal CBS memorandum explicitly states that cleaning switchgear components could cause asbestos to become airborne and that protective equipment should be worn.[30] It was precisely this type of evidence that defeated CBS' motion for summary judgment in *Frankenberger*. The evidence here is no less compelling. Accordingly, we conclude that a reasonable jury could find that Mr. Zellner was exposed to asbestos-containing dust from CBS switchgear and that it was a substantial factor in his fatal illness.

## IV. Conclusion

---

[24] *Id.* at 314.
[25] *Id.* at 283-84.
[26] *Id.* at 284 (Plaintiff's expert explained that "[t]he more frequently this heating and cooling cycle occurs, the greater the amount and rate of deterioration."); *id.* at 332.
[27] **[Appellant Br. at 7.]**
[28] *Id.* at 147, 153.
[29] *Id.* at 314.
[30] *Id.* at 339-40.

For the reasons given above, we will reverse the district court and remand for further proceedings.